IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| CHEZ CHEZ M JACKSON, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> WHELAN EVENT STAFFING ) <br> SERVICES, INC. d/b/a GARDAWORLD ) <br> SECURITY SERVICES, and WHELAN ) <br> EVENT STAFFING SERVICES, INC. ) <br> d/b/a BEST CROWD MANAGEMENT ) <br> ) <br> Defendants. ) | Civil Action No. 24-cv-00072-LKG <br><br> Dated:  July 19, 2024 |

**MEMORANDUM OPINION**

**I.  INTRODUCTION**

In this employment discrimination action, Plaintiff, Chez Chez M. Jackson, brings claims against Defendants, BEST Crowd Management, formerly known as Whelan Event Staffing Services, Inc. d/b/a BEST Crowd Management, and Whelan Event Staffing Services, Inc. d/b/a GardaWorld Security Services (collectively, "Whelan"), for hostile work environment and constructive discharge, pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 200e *et seq.* ("Title VII"), and the Maryland Fair Employment Practices Act, ("MFEPA"), Md. Code Ann. § 20-602.  *See generally* ECF No. 3.  Whelan has moved to dismiss the complaint, pursuant to Fed. R. Civ. P. 12(b)(6).  ECF No. 5.  The motion is fully briefed.  ECF Nos. 3, 5, 5-1, 8, 8-1, 10.  No hearing is necessary to resolve the motion.  *See* L.R. 105.6 (D. Md. 2023).  For the reasons that follow, the Court: (1) **GRANTS** Whelan's motion to dismiss and (2) **DISMISSES** the complaint.

## II.     FACTUAL AND PROCEDURAL BACKGROUND[1]

### A.     Factual Background

In this employment discrimination action, Plaintiff Chez Chez M. Jackson brings hostile work environment and constructive discharge claims against her former employer, Whelan, pursuant to Title VII and the MFEPA. *See generally* ECF No. 3. Specifically, Plaintiff alleges the following claims in the complaint: (1) hostile work environment upon the basis of sex (Title VII and MFEPA) (Count One) and (2) constructive discharge (Title VII and MFEPA) (Count Two). *Id.* As relief, Plaintiff seeks to recover, among other things, back pay, front pay, lost benefits and attorneys' fees and costs. *Id.* at Prayer for Relief.

<u>The Parties</u>

Plaintiff Chez Chez M. Jackson is a resident of the State of Maryland, who was employed by Whelan. ECF No. 3 at ¶ 6. Plaintiff identifies as female. *Id.* at ¶ 12.

Whelan Events Staffing Services, Inc. is a Missouri corporation that does business in Maryland under the registered trade names of BEST Crowd Management and GardaWorld Security Services. *Id.* at ¶ 7.

<u>Plaintiff's Allegations</u>

As background, Plaintiff previously worked, and performed event management services, for Whelan. *Id.* at ¶ 12. Plaintiff alleges that Whelan and its employees subjected her to "severe and pervasive sexual harassment" in the workplace and to a hostile work environment. *Id.* at ¶ 45.

In this regard, Plaintiff alleges several incidents of workplace sexual harassment in the complaint. First, Plaintiff alleges that, on or about November 26, 2022, she was assigned by Whelan to perform the event management for a Penn State University football game. *Id.* at ¶ 13; ECF No. 5-1 at 2. Plaintiff alleges that Whelan provided bus transportation to and from this event for Plaintiff and other Whelan employees. ECF No. 3 at ¶ 14. Plaintiff also alleges that she was paired to sit with her supervisor, "Shawn," on the bus. *Id.* at ¶ 17.

---

[1] The facts recited in this memorandum opinion are derived from the complaint; Whelan's motion to dismiss and the memorandum in support thereof; and the opposition thereto. ECF Nos. 3, 5, 5-1, 8, 8-1.

2

In this regard, Plaintiff alleges that she fell asleep during the return bus ride following the event and that she was awakened by Shawn "massaging her lower back." *Id.* at ¶ 18. Plaintiff further alleges that that she attempted to "maneuver her body to get 'Shawn' to stop touching her," but Shawn used his knee to maintain contact and continued massaging Plaintiff for approximately 15 to 20 minutes. *Id.* at ¶¶ 18-19, 21. Plaintiff contends that she was without power to stop Shawn from touching her because of "the fear and shame of the sexual contact." *Id.* at ¶ 20. And so, Plaintiff alleges that she reported this incident to Whelan's Director of Services, Lachelle Slade, when the bus stopped for a rest stop. *Id.* at ¶ 23. After reporting this incident, Plaintiff requested and received permission to travel on another bus for the remainder of the trip. *Id.* at ¶¶ 24-25.

Plaintiff again reported this incident to Whelan after the trip. *Id.* at ¶ 26. Plaintiff alleges that Whelan made a "follow-up inquiry" regarding the incident on or about November 29, 2022.[2] *Id.* at ¶ 27. At that time, Shawn apologized to Plaintiff. *Id.* at ¶ 28. But Plaintiff alleges that Shawn was not reprimanded by Whelan and Whelan did not provide sexual harassment training to its employees. *Id.* at ¶ 30.

Regarding the second incident of alleged sexual harassment, Plaintiff contends that, on June 24, 2023, she worked an event at FedEx Fields during which she received a text message from her supervisor "Oscar." *Id.* at ¶¶ 32-33. Plaintiff alleges that this text message contained a picture of Oscar's penis. *Id.* at ¶ 34. Plaintiff further alleges that she reported this incident to Whelan. *Id.* at ¶ 35. Nevertheless, Plaintiff alleges that Whelan did not reprimand Oscar, nor did it provide sexual harassment training to its employees. *Id.* at ¶¶ 36-37.

Lastly, Plaintiff alleges that, sometime after these two incidents, she was scheduled to work a Beyonce concert. *Id.* at ¶ 38. But Plaintiff alleges that, after learning that the supervisors who "had subjected her to sexual harassment would be working as her supervisor" for the concert, she did not return to work "in fear that she would be subjected to sexual harassment." *Id.* at ¶¶ 39-40. Thereafter, Whelan terminated Plaintiff's employment for failure to return to work. *Id.* at ¶ 41.

---

[2] Plaintiff alleges in the complaint that Whelan made the "follow-up inquiry" on August 29, 2022. ECF No. 3 at ¶ 27. But this date is several months before the alleged harassment occurred in November 2022. *Id.* at ¶ 13.

### B. Procedural Background

On October 29, 2023, Plaintiff filed the complaint in this employment discrimination action in the Circuit Court for Prince George's County, Maryland.[3] ECF No. 1. Whelan subsequently removed the case to this Court on January 9, 2024. *Id.*

On January 16, 2024, Whelan filed a motion to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6), and a memorandum in support thereof. ECF Nos. 5, 5-1. On February 7, 2024, Plaintiff filed a response in opposition to Whelan's motion to dismiss. ECF No. 8. Whelan filed a reply brief on February 20, 2024. ECF No. 10.

Whelan's motion to dismiss having been fully briefed, the Court resolves the pending motion.

## III. LEGAL STANDARDS

### A. Rule 12(b)(6)

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible when "the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). When evaluating the sufficiency of a plaintiff's claims under Rule 12(b)(6), the Court accepts the factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff. *Nemet Chevrolet, Inc. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005) (citations omitted). But, the complaint must contain more than "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement . . . ." *Nemet Chevrolet*, 591 F.3d at 255. And so, the Court should grant a motion to dismiss for failure to state a claim if "it is clear that no relief could be granted under any set of facts that could be proved consistent with

---

[3] Prior to commencing this civil action, Plaintiff filed a charge of discrimination with regards to her sexual harassment claims with the Equal Employment Opportunity Commission ("EEOC") and the Maryland Commission on Civil Rights. ECF No. 3 at ¶ 8. On October 24, 2023, Plaintiff received a notice of the right-to-sue letter. *Id.* at ¶ 9.

the allegations." *GE Inv. Priv. Placement Partners II, L.P. v. Parker,* 247 F.3d 543, 548 (4th Cir. 2001) (quoting *H.J. Inc. v. Nw. Bell Tel. Co.,* 492 U.S. 229, 249-50 (1989)).

### B. Title VII And Hostile Work Environment Claims

Title VII prohibits employment discrimination based on race, color, religion, sex and national origin. *See* 42 U.S.C. § 2000e.[4] There are two methods for proving intentional sex discrimination in employment under Title VII: (1) through direct or indirect evidence of intentional discrimination, or (2) through circumstantial evidence under the three-step, burden-shifting scheme set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973). *See Sanders v. Tikras Tech. Sols. Corp.*, 725 F. App'x 228, 229 (4th Cir. 2018); *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 213-14 (4th Cir. 2007). Under the first method, an employee may utilize evidence of discrimination that demonstrates that the defendant "'announced, or admitted, or otherwise unmistakably indicated that the [discriminatory consideration] was a determining factor.'" *Palmer v. Liberty Univ., Inc.*, 72 F.4th 52, 63 (4th Cir. 2023) (resolving an intentional discrimination claim in the ADEA context) (citation omitted). Under this method, the plaintiff "must produce direct evidence of a stated purpose to discriminate and/or [indirect] evidence of sufficient probative force to reflect a genuine issue of material fact." *Goldberg v. B. Green & Co.*, 836 F.2d 845, 848 (4th Cir. 1988).

If direct or indirect evidence of intentional discrimination is lacking, a plaintiff may proceed under *McDonnell Douglas*. *See Sanders*, 725 F. App'x at 229; *Holland*, 487 F.3d at 213-14. Under the *McDonnell Douglas* framework, a plaintiff must first establish a *prima facie* case of discrimination. *See McDonnell Douglas Corp.*, 411 U.S. at 802. A plaintiff may establish a prima facie case of disparate treatment on the basis of sex under Title VII by showing: (1) the plaintiff's membership in a protected class; (2) an adverse employment action; (3) satisfactory job performance; and (4) that similarly-situated employees outside the protected

---

[4] Plaintiff also alleges discrimination claims under the MFEPA. ECF No. 3 at ¶¶ 42-60. The MFEPA "is the state law analogue to Title VII." *Alexander v. Marriott Int'l, Inc*., 2011 WL 1231029, at *6 (D. Md. Mar. 29, 2011). When a plaintiff has not asserted a distinction between a federal and Maryland discrimination claim, the Court may apply the same standards to the analysis of the state and federal discrimination claims. *See Foster v. Summer Vill. Cmty. Assoc., Inc.*, 520 F. Supp. 3d 734, 741 (D. Md. 2021); *see also Blakes v. City of Hyattsville*, 909 F. Supp. 2d 431, 444 (D. Md. 2012).

class received more favorable treatment.  *See White v. BFI Waste Servs., LLC*, 375 F.3d 288, 295 (4th Cir. 2004).  The failure to demonstrate one of these required elements is fatal to a plaintiff's ability to establish a *prima facie* case.  *See Hemphill v. Aramark Corp.*, 2014 WL 1248296, at *19 (D. Md. Mar. 25, 2014), *aff'd*, 582 F. App'x 151 (4th Cir. 2014).

If a plaintiff establishes a *prima facie* case of discrimination, the burden of production shifts to the defendant to present a legitimate, nondiscriminatory reason for the adverse employment action alleged.  *See Reeves v. Sanderson Plumbing Prods., Inc*., 530 U.S. 133, 142 (2000) (citing *Tex. Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981)).  If the defendant succeeds in doing so, that showing will rebut the presumption of discrimination raised by the plaintiff's *prima facie* case.  *See Stokes v. Westinghouse Savannah River Co*., 206 F.3d 420, 429 (4th Cir. 2000) (citing *Burdine*, 450 U.S. at 255 n.10).  The plaintiff then must "prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination."  *Burdine*, 450 U.S. at 253 (citing *McDonnell Douglas Corp.*, 411 U.S. at 804).  And so, "[t]he plaintiff always bears the ultimate burden of proving that the employer intentionally discriminated against her."  *Evans v. Tech. Applications & Serv. Co*., 80 F.3d 954, 959 (4th Cir. 1996) (citing *Burdine*, 450 U.S. at 253).

Plaintiff asserts a hostile work environment claim in this case.  To establish a hostile work environment claim based upon sex, Plaintiff must allege workplace harassment that:  "(1) was 'unwelcome'; (2) was based on [her] sex; (3) was 'sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere'; and (4) was, on some basis, imputable to the employer."  *Parker v. Reema Consulting Servs., Inc.*, 915 F.3d 297, 302 (4th Cir. 2019) (quoting *Bass v. E.I DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003)).  Plaintiff must also present a particularized basis for alleging that discriminatory conduct was because of her membership in a protected class.  *Young v. Giant Food Stores, LLC*, 108 F. Supp. 3d 301, 310 (D. Md. 2015).

### C. Constructive Discharge

Lastly, a constructive discharge claim arises when an employee resigns because the "circumstances of discrimination" made the employee's working conditions "'so intolerable that a reasonable person in the employee's position would have felt compelled to resign.'"  *Green v. Brennan,* 578 U.S. 547, 555 (2016) (quoting *Pa. State Police v. Suder*s, 542 U.S. 129, 148

6

(2004)).  Prior to the Supreme Court's ruling in *Green*, this Court declined to recognize constructive discharge as a standalone cause of action.  *See Crockett v. SRA Int'l*, 943 F. Supp. 2d 565, 576 (D. Md. 2013) ("[C]onstructive discharge is not a standalone 'claim.'"); *Cohens v. Md. Dep't of Hum. Res.*, 2013 WL 3944451, at *5 n.37 (D. Md. July 30, 2013) ("Constructive discharge is not a standalone claim, but rather can satisfy the element of an adverse employment action in a substantive claim.") (internal quotation marks and citations omitted); *Rosa v. Bd. of Educ. of Charles Cnty., Md.*, 2012 WL 3715331, at *10 (D. Md. Aug. 27, 2012) ("Constructive discharge is not a claim per se."); *Reed v. Action Prods., Inc.*, 2012 WL 2711051, at *2 (D. Md. July 6, 2012) ("Constructive discharge, however, is not an independent basis for relief.").  More recently, in *Schrof v. Clean Earth, Inc.*, this Court also found that "constructive discharge is an adverse action that can serve as the 'matter alleged to be discriminatory'. . . [but] it is not an independent cause of action." 2023 WL 3763984, at *7 (D. Md. June 1, 2023).

However, the Supreme Court in *Green* held that "a resignation triggers the limitations period for a constructive-discharge claim." 542 U.S. at 563.  As Justice Sotomayor emphasized, "constructive discharge is a claim distinct from the underlying discriminatory act." 542 U.S. at 559 (citing *Pa. State Police v. Suders*, 542 U.S. 129, 149, (2004)). As such, a plaintiff may bring a standalone constructive discharge claim, so long as they show "[s]he was discriminated against by [her] employer to the point where a reasonable person in [her] position would have felt compelled to resign" and that "[s]he actually resigned." *Id.* at 555 (internal citations omitted).

The Fourth Circuit echoed the holding in *Green*, finding that "[t]o establish a constructive discharge claim, a plaintiff must show 'that [s]he was discriminated against by [her] employer to the point where a reasonable person in [her] position would have felt compelled to resign' and that she actually resigned." *Evans v. Int'l Paper Co.*, 936 F.3d 183, 193 (4th Cir. 2019) (citing *Green*, 578 U.S. at 555).

In this regard, the Fourth Circuit has held that:

> Intolerability is not established by showing merely that a reasonable person, confronted with the same choices as the employee, would have viewed resignation as the wisest or best decision, or even that the employee subjectively felt compelled to resign.  Instead, intolerability is assessed by the objective standard of whether a reasonable person in the employee's position would have felt compelled to resign . . . that is, whether he would have had no choice but to resign.

*Perkins v. Int'l Paper Co.*, 936 F.3d 196, 212 (4th Cir. 2019) (internal quotations and citations omitted). Given this, "[p]roof of constructive discharge requires 'a greater severity or pervasiveness of harassment than the minimum required to prove a hostile working environment.'" *Id.* The "frequency of the conditions at issue" is also an important part of the intolerability assessment. *Evans*, 936 F.3d at 193; *see also Gaines v. Baltimore Police Dep't*, 657 F. Supp. 3d. 708, 741 (D. Md. 2023). And so, "[c]onstructive discharge claims are held to a high standard, and even truly awful working conditions may not rise to the level of constructive discharge." *Crockett v. SRA Int'l*, 943 F. Supp. 2d 565, 577 (D. Md. 2013) (citing *Blakes v. City of Hyattsville*, 909 F. Supp. 2d 431, 438 (D. Md. 2012)). In this regard, this Court has recognized that "constructive discharge requires a greater showing than a claim of hostile work environment." *Gaines*, 657 F. Supp. 3d at 741 (D. Md. 2023) (citing *Evans*, 936 F.3d at 193); *see also Nnadozie v. Genesis HealthCare Corp.*, 730 F. App'x 151, 162 (4th Cir. 2018) ("The 'intolerability' standard governing constructive discharge claims is more stringent than the 'severe and pervasive' standard for hostile work environment claims.").

### IV.   ANALYSIS

Whelan has moved to dismiss this matter, pursuant to Fed. R. Civ. P.12(b)(6), upon four grounds. First, Whelan argues that Plaintiff fails to state a plausible hostile work environment claim under Title VII and the MFEPA, because she does not allege sufficient facts to show that the unwelcomed conduct in this case was either severe and pervasive, or unreasonably created a working environment that a reasonable person would perceive to be abusive or hostile. ECF No. 5-1 at 4-7. Second, Whelan argues that Plaintiff also fails to state a plausible constructive discharge claim under Title VII and the MFEPA, because Maryland law does not recognize a separate cause of action for constructive discharge and Plaintiff fails to allege facts to show that her work conditions were intolerable. *Id.* at 7-10. Third, Whelan argues that, to the extent that Plaintiff asserts failure to accommodate claims in the complaint, she fails to state plausible failure to accommodate claims. *Id.* at 10-11. Lastly, Whelan argues that Plaintiff's claims against BEST Crowd Management and GardaWorld Security Services must be dismissed, because these two entities are trade names and Whelan Event Staffing Services, Inc. is the only

legal entity named in the complaint.[5]  *Id*. at 11.  And so, Whelan requests that the Court dismiss this matter.  *Id*.

Plaintiff counters in her response in opposition that she states plausible claims for hostile work environment and constructive discharge in this matter.  ECF No. 8-1 at ¶ 82.  And so, Plaintiff requests that the Court deny Whelan's motion to dismiss.  *Id*. at ¶ 83.

For the reasons that follow, Plaintiff fails to state plausible hostile work environment claims under Title VII and the MFEPA in the complaint, because she does not sufficiently allege facts to show that the unwelcome conduct at issue in this case was pervasive or severe.  Plaintiff also fails to state plausible constructive discharge claims under Title VII and the MFEPA, because she neither alleges facts to show that circumstances of discrimination made her working conditions "intolerable," nor that she resigned her position.  And so, the Court (1) GRANTS Whelan's motion to dismiss and (2) DISMISSES the complaint.

**A.  Plaintiff Fails To State A Plausible Hostile Work Environment Claim**

As an initial matter, Whelan persuasively argues that Plaintiff fails to state plausible hostile work environment claims under Title VII and the MFEPA in the complaint.

To establish a hostile work environment claim based upon sex, Plaintiff must allege facts to show workplace harassment that: "(1) was 'unwelcome'; (2) was based on [her] sex; (3) was 'sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere'; and (4) was, on some basis, imputable to the employer."  *Parker v. Reema Consulting Servs., Inc.*, 915 F.3d 297, 302 (4th Cir. 2019) (quoting *Bass v. E.I DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003)).  And so, the complaint must contain facts that, taken as true, are sufficient to show that the unwelcome conduct alleged in this case was so severe or pervasive to alter the conditions of her employment and to create an abusive atmosphere.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (finding that the complaint must allege sufficient facts to state a plausible claim for relief); *Young v. Giant Food Stores, LLC*, 108 F. Supp. 3d 301, 310 (D. Md.

---

[5] Whelan states that BEST Crowd Management Inc., which was formerly known as Whelan Event Staffing Services, Inc., is the proper defendant in this matter.  ECF No. 5-1 at 11.

2015) (holding that plaintiffs must provide a particularized basis to allege discriminatory actions).

In this regard, the Fourth Circuit has held that "[e]lement three of a hostile work environment claim requires a showing that "'the environment would reasonably be perceived, and is perceived, as hostile or abusive;' the plaintiff may, but is not required to, establish that the environment is 'psychologically injurious.'" *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d. 264, 277 (4th Cir. 2015) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 22 (1993)). Whether the environment is objectively hostile or abusive is "judged from the perspective of a reasonable person in the plaintiff's position." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998).

Relevant to this dispute, the Fourth Circuit has recognized that hostile work environment claims often involve repeated conduct, because "'a single act of harassment may not be actionable on its own.'" *Boyer-Liberto*, 786 F.3d. at 277 (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115-17 (2002)). But an isolated incident of harassment can amount to discriminatory changes in the terms and conditions of employment if the incident is extremely serious. *Id.* In addition, the status of the harasser may also be a significant factor in determining the severity of harassing conduct, because "'a supervisor's power and authority invests his or her harassing conduct with a particular threatening character.'" *Id.* at 278 (citing *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 763 (1998)). And so, the Court looks "at all the circumstances," which "may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23.

In this case, a careful reading of the complaint makes clear that Plaintiff has not sufficiently alleged facts to show that the unwelcome conduct alleged in the complaint was severe or pervasive. In the complaint, Plaintiff alleges two incidents of workplace sexual harassment that occurred prior to the termination of her employment. First, Plaintiff alleges that, on or about November 26, 2022, she was awakened by her supervisor, "Shawn," "massaging her lower back" and that she attempted to "maneuver her body to get 'Shawn' to stop touching her," but Shawn used his knee to maintain contact and continued massaging Plaintiff for approximately 15 to 20 minutes. ECF No. 3 at ¶¶ 13, 18-19, 21. Second, Plaintiff alleges that,

10

on June 24, 2023, she received a text message from another supervisor, "Oscar," which contained a picture of Oscar's penis. *Id.* at ¶¶ 32, 34.

The Court agrees with Whelan that, while troubling, these two incidents are not sufficient to show that the alleged unwelcome conduct was sufficiently severe or pervasive to alter the conditions of Plaintiff's employment and to create an abusive atmosphere. The factual allegations in the complaint makes clear that the two incidents of sexual harassment at issue in this case occurred approximately seven months apart. ECF No. 5-1 at 2. The complaint also makes clear that these two incidents involve different supervisors and different conduct. ECF No. 3 at ¶¶ 15, 33. Given this, the complaint shows that these two incidents of sexual harassment were isolated and unrelated.

While an isolated incident of sexual harassment can be actionable if it is extremely serious, the complaint is devoid of facts to show that the two incidents of alleged sexual harassment in this case were serious and altered the conditions of Plaintiff's employment and created an abusive atmosphere. *Boyer–Liberto*, 786 F.3d at 277. While Plaintiff argues that the sexual harassment involving her supervisors was "extremely serious," she acknowledges that Whelan granted her request to be seated on a different bus after she reported the conduct of her supervisor "Shawn." ECF No. 8-1 at 7-8; ECF No. 3 at ¶¶ 24-25. Plaintiff also does not allege that she experienced any other unwelcome conduct involving these two supervisors or others at the workplace. ECF No. 3 at ¶ 29.

Plaintiff does allege that she ultimately decided not to return to work, after learning that she would be assigned to work with these supervisors during a Beyonce concert. ECF No. 3 at ¶¶ 38-40. But she does not allege any facts to show why the two isolated incidents of sexual harassment cited in the complaint were so severe and pervasive as to alter the conditions of her employment and create an abusive workplace. Given this, the complaint lacks facts to show that Plaintiff's work environment was objectively hostile or abusive when "judged from the perspective of a reasonable person in [her] position." *Oncale*, 523 U.S. at 81.

The facts in the complaint are also not sufficient to establish a hostile work environment claim under the MFEPA. To state a hostile work environment claim under the MFEPA, Plaintiff must allege facts to show:

11

> [C]onduct, which need not be severe or pervasive, when: . . .
> (1) submission to the conduct is made either explicitly or implicitly a term
> or condition of employment of an individual; (2) submission to or
> rejection of the conduct is used as a basis for employment decisions
> affecting the individual; or (3) based on the totality of the circumstances,
> the conduct unreasonably creates a working environment that a reasonable
> person would perceive to be abusive or hostile.

*See* Md. Code Ann., State Gov't § 20-601(h)(1)(ii).

Plaintiff again relies upon the two aforementioned isolated incidents of alleged sexual harassment to support her hostile work environment claim under the MFEPA. ECF No. 3. But, as discussed above, the complaint lacks facts to show that these two incidents impacted the conditions of Plaintiff's employment. Given this, the complaint lacks sufficient facts to show that, based on the totality of the circumstances, the unwelcome conduct alleged by Plaintiff unreasonably created a working environment that a reasonable person would perceive to be abusive or hostile. And so, the Court must also DISMISS Plaintiff's MFEPA-based hostile work environment claim.

### B. Plaintiff Fails To State A Plausible Constructive Discharge Claims

Plaintiff's constructive discharge claims under Title VII and the MFEPA are also problematic. In the complaint, Plaintiff alleges standalone claims for constructive discharge under Title VII and the MFEPA. ECF No. 3 at ¶¶ 56-60.

As an initial matter, Whelan argues without persuasion that these claims should be dismissed, because Plaintiff cannot assert a standalone claim for constructive discharge. ECF No. 5-1 at 8. As the Supreme Court recognized in *Green v. Brennan*, "constructive discharge is a claim distinct from the underlying discriminatory act." 578 U.S. 547, 559 (2016). Given this, Whelan's argument is foreclosed by *Green*, and the Court declines to dismiss Plaintiff's constructive discharge claims for this reason.

While Plaintiff may pursue her claims for constructive discharge, these claims must, nonetheless, fail. The complaint lacks sufficient factual allegations to state plausible constructive discharge claims for many of the same reasons that Plaintiff's hostile work environment claim is not plausible.

To state claims for constructive discharge, Plaintiff must allege facts to show that "circumstances of discrimination" made her working conditions "'so intolerable that a

reasonable person in [her] position would have felt compelled to resign,'" and that "[s]he actually resigned." *Id.* at 555 (quoting *Pa. State Police v. Suder*s, 542 U.S. 129, 148, (2004)). In this regard, the Fourth Circuit has held that:

> Intolerability is not established by showing merely that a reasonable person, confronted with the same choices as the employee, would have viewed resignation as the wisest or best decision, or even that the employee subjectively felt compelled to resign. Instead, intolerability is assessed by the objective standard of whether a reasonable person in the employee's position would have felt compelled to resign . . . that is, whether he would have had no choice but to resign.

*Perkins v. Int'l Paper Co.*, 936 F.3d 196, 212 (4th Cir. 2019) (internal quotations and citations omitted). And so, "[p]roof of constructive discharge requires 'a greater severity or pervasiveness of harassment than the minimum required to prove a hostile working environment.'" *Id.* The "frequency of the conditions at issue" is also an important part of the intolerability assessment. *Evans v. Int'l Paper Co.*, 936 F.3d 183, 193 (4th Cir. 2019); *see also Nnadozie v. Genesis HealthCare Corp.*, 730 F. App'x 151, 162 (4th Cir. 2018) ("The 'intolerability' standard governing constructive discharge claims is more stringent than the 'severe and pervasive' standard for hostile work environment claims.").

Whelan argues with persuasion here that Plaintiff does not allege facts in the complaint to show that her working conditions were intolerable, because two unrelated incidents of workplace sexual harassment that occurred approximately seven months apart do not support her constructive discharge claim. ECF No. 5-1 at 9; *see also Evans*, 936 F.3d at 193 (recognizing that "when the conduct is isolated or infrequent, it is less likely to establish the requisite intolerability"). And so, the Court agrees with Whelan that "[n]o reasonable person in Plaintiff's position would have determined they had no choice but to resign" after these two incidents. ECF No. 5-1 at 9-10.

Plaintiff also fails to allege facts to show that she actually resigned her position. The complaint makes clear that Plaintiff did not resign her position following the two alleged incidents of sexual harassment. ECF No. 3 at ¶ 40 (stating that Plaintiff did not return to work after learning that the supervisors who subjected her to sexual harassment would be working as her supervisors during the Beyonce concert.). Rather, Plaintiff acknowledges in the complaint that she was terminated after she failed to return to work. ECF No 3 at ¶ 41.

Given this, Plaintiff also fails to plead facts to show that she actually resigned her position. *Green,* 578 U.S. at 559. And so, the Court must also DISMISS Plaintiff's constructive discharge claims.[6]

## V. CONCLUSION

In sum, Plaintiff fails to state plausible hostile work environment claims under Title VII and the MFEPA, because she does not sufficiently allege facts to show that the unwelcome conduct at issue in this case was pervasive or severe. Plaintiff also fails to state plausible constructive discharge claims under Title VII and the MFEPA, because she neither alleges facts to show that circumstances of discrimination made her working conditions "intolerable," nor that she resigned her position. And so, for the foregoing reasons, the Court:

(1) **GRANTS** Whelan's motion to dismiss; and

(2) **DISMISSES** the complaint.

A separate Order shall issue.

**IT IS SO ORDERED.**

                                                    s/Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
United States District Judge

---

[6] Because the Court does not read the complaint to assert reasonable accommodation claims, the Court does not address Whelan's motion to dismiss such claims. The Court also GRANTS Plaintiff leave to file her response in opposition to Whelan's motion to dismiss out of time.